Thank you, Your Honor. I'm James Poliquin. I represent Northern Assurance. In light of the fact there's a cross-appeal here, I would like to reserve five minutes of my 15 minutes. Thank you. The issues, even though there's some overlap between the issues of my appeal and the cross-appeal, particularly the damage issues where it overlaps, I obviously want to focus initially on our appeal that pertains to the lower court's conclusion that the Your Product exclusion, although applicable to deny a defense to Lyman Morse Boatbuilding, the named insured corporation, it did not have application to Kevin Lyman as the president and partial owner of the corporation. The good news is the Your Product exclusion is not as complicated as the plan in the prior case. Basically, the essence of analyzing that exclusion is to obviously go to the defined term. I don't think there's any dispute that if you just go to the definition, the entire vessel at issue here with all of its representations and warranties fits the definition. Then you go back to the exclusion and essentially what they want to do is interject into the exclusion a limitation that is not there. The exclusion does not speak to the identity of the insured against whom the claim is brought. It speaks to the identity of the property damaged. Effectively, they're rewriting the our reply brief, that it really is a damage to the insured's the, insured's product exclusion and it should read property damage to the product of the insured arising out of any part of it. Can I ask you a question? Yes. So I'll understand it a little better. Let's assume that I'm a guest on the boat and I've come with wonderful clothing and so forth and one of the systems fails and sewerage is spilled all over my wonderful clothing and I have a property damage claim. Does the policy cover that? Yes. And if it would, wouldn't there be an obligation to defend because it's a potential claim? If the guest actually brought a claim for personal property damaged by a failure of the product, certainly your product exclusion would not operate to eliminate that coverage. That's clear and there would be a duty to defend that type of claim. Well, under Maine law, isn't there a sort of an expansive view of what triggers a duty to defend? Well, I mean, you could say it's certainly viewed as an expansive view, but what it all hinges down to, what it all hinges on, is how someone interprets the word possibility. And one can look at that word, as they do, and say a possibility is a legitimate possibility for purposes of the comparison test. If it's something that you can hypothesize solely in your mind and then you go to the complaint and it doesn't say, that didn't happen. If that's a legitimate possibility, the duty to defend is essentially limitless. That's why I argue, and you're essentially dealing with their cross-appeal issue, the threshold for duty to defend here, is that the comparison test is never supposed to be a test that looks to the complaint, not for the purpose of deciding what really is being alleged, but to ask yourself the question, does this negate what I just made up and hypothesized? And that's why I put like three separate Maine Supreme Court cases that involve similar business exclusions, Baywood, INA, Maine Drilling and Blasting, and all of them, not one of those complaints. I agree that Judge Stahl's question goes more to the cross-appeal, but let's start with your appeal, which has to do with the fact that the insurance is denied, both as to indemnity and as to duty to defend, to the Yacht Company, because of your product exclusion. But the trial judge found that the president of the company, who you sued as an alter ego of the company and for his own misrepresentations, was not bound by that. That's right. Your argument is, and that is because the your product limitation does not depend on who the insured is, and once the judge found the your product exclusion barred coverage to the company, it necessarily barred coverage to the company. That's correct. Unlike many exclusions, which speak to being insured specific, this only requirement is that it be your product. And obviously the lower court concluded that the allegation of alter ego piercing the veil probably would satisfy even the lower court that it should apply, and he seized on an allegation in paragraph 68 in the unfair trade practices claim, which could not even be applicable to him unless it was an alter ego theory or he was the seller of the product. And so, plus that was just a representation as to the, it was a warranty as to the quality of the boat. As I indicated, every warranty, everything, activity is done by a person if it's a corporation. I want to see if you're arguing a slightly different theory, because that is the theory I understood, but it's different than what you've articulated here, which is that the owner of the company is sued only for, as an alter ego, and therefore you have to have the same result. And that to the extent it's based on misrepresentations, that's excluded in any event. Well, certainly fraud, misbilling, a lot of, the only thing that could conceivably be covered in this, the only thing that's property damage that's alleged is the actual vessel itself. A lot of the other things are economic losses, fraud, supposedly charging for other projects, which is an economic loss. And so when you focus on what conceivably gets through threshold coverage, well, property damage, the vessel could be damaged, but then you go to the business risk exclusions, the product. The exclusion is, would be very unusual to apply the business risk exclusions to a corporate named insured, but to no other insureds which are the actors through which the corporate insured has to do all these things, including its product. I don't believe paragraph 68 is really a statement of an independent claim of misrepresentation. It's an example of one of the warranties and representations, and as to who made it. It's the unfair trade practices count. You have to be a seller of a product to even be liable under that statute in Maine. And so it wasn't legitimate to escape the alter ego issue and jump over and say, oh, paragraph 68 is not alter ego piercing the veil. That's just an allegation of fact as to who within the company made the representation on behalf of the company to be an unfair trade practice. When you look at the exclusion, this exclusion, what it boils down to, should be applied no differently than if instead of using the words your product, which have to be defined because every insured's product is different, if this exclusion said this insurance does not apply to any claim for property damage to any vessel sold or manufactured by Lyman Morse Boat Building, in addition to claims for breach of warranty or representation. If it said that, which is what your product is, we wouldn't even have an issue. There'd be no argument, well, that doesn't apply to Cabot Lyman. What's causing the confusion is the word your product, your. If you put in instead the real product, which is how it should be interpreted, as I'm saying, there's nothing in this exclusion that legitimizes believing it is dependent upon which insured the claim is being brought against. There's nothing in there that suggests that. One point you did make is that the main law court treats CGL policies very differently than business risk policies, and that this is sort of going over the line. Yeah, well, the three cases I focused on, the reason I focused on them in the past, where the law court in all three found no duty to defend under CGL policies, was because those are examples of claims, a bad sewer septic system, blasting damages, and failure in construction, where the court found no duty to defend, not because you couldn't kick back and hypothesize and theorize about some sort of damage other than to the work or product, but because the complaint didn't legitimately even attempt to make such a claim. When you look at the very precise nature of the damages claimed here, very precise. I want my money back. I want the difference between the value of the boat as promised and what I got. I want the expenses for my inconvenience. Very specific list. There's nothing, there's not even a general allegation, oh, and other damages. Even Baywood Condominium had some of those general things, and the court said, that wasn't enough to go off and hypothesize that it included something that wasn't stated in there. It's almost, to me, it's impossible to have those three decisions be consistent with a finding of a duty to defend in this case. Thank you. Good morning, Chief Judge Lynch, and may it please the court. My name is Rob Hatch, and I represent Lyman Morse Boat Building in Cabot Lyman in this matter, and I want to start out actually where I believe Judge Stahl left off on our cross appeal, and you're correct, Your Honor. If, in fact, there is damage to property, whether it be the owner himself, in this case, Russ Irwin, or a guest on his boat, to the extent there would be damage to any property other than the boat, there absolutely would be coverage, and the duty to defend would be automatically triggered. And the reason I ask that question is that because it seems to me that as you look at this from your perspective, what you're saying is that this other damage, which is not directly the boat, could occur both individually and to the corporation. And that's how you make your claim, I guess, that you should have had a duty to defend in both cases. And... But you didn't allege any such damage. Well, that was my following question. I respectfully disagree. I think that there's been some discussion about how broadly in the state of Maine the duty to defend is construed, and as this court held back in 2003 in auto Europe, the duty to defend is much broader in Maine than in other states. In this case, Russ Irwin, and I don't think we need to get to the hypotheticals, Russ Irwin made a series of allegations in his complaint about the fact that this was going to be his residence on the ocean and on the open seas, and that there was significant risks to property. Those are allegations that he makes in his complaint, and at the end, he does have the catch-all of whatever relief the court deems just and appropriate. Granted, that's broad. But what it's... We can't possibly make the duty to defend turn on a broad claim of relief like that. I think you can... There's no limit to the duty to defend. I think that there are limits, and I... Could you name a... Give an example of a product defect that you couldn't hypothesize might create a risk of injury to some other property? In the context of this case? Any product defect. Well, I suppose... I mean, I suppose that any time you have a product defect, there's always the risk that there could be damage to other property other than the product itself. So there'd always be a duty to defend under your analysis. I think it would depend upon the causes of actions that are asserted in the complaint, which is the only thing you look to. Suppose I buy a baseball bat from you, and then I take it home, and I find out, whoa, it's got a crack in the middle of it. It's defective. And I sue you for having sold me a defective bat. Are you on the hook, as your insurer, on the hook because had I used that bat, which we know I didn't, but had I used it, it might have broken off and hit the third basement? I think it would depend upon the theories of liability you assert in the complaint and exactly what the policy provisions contain. Theoretically, is it possible? It is, Your Honor. But in each case, is it absolutely going to occur that the duty to defend is always triggered? I don't think that's true. I mean, there's a series of cases that would indicate that if the allegations as put in the complaint clearly preclude any potential coverage, then the denial of a defense is appropriate. That's just not this case. One would think that it would be very easy to put in a complaint, harm done, injury done to other individuals, other product. But this doesn't have it. I agree that this complaint is silent on what? Normally, complaints ought to allege some facts about what actually happened. I don't disagree, Your Honor. I agree that the complaint about any allegations regarding the potential for damage to property other than the vessel itself is silent. But what we do know is that there are allegations that says there are risks to the damage to property, and the only question on the duty to defend is whether or not there is the potential, even if remote, that certain allegations could be proven at trial to fall within coverage. And so if there is the prospect of damage to property, whether it be Irwin's or someone else's, but in this case probably just Irwin's other than the boat, then it triggers the duty to defend. Doesn't the complaint at least have to allege that that possibility existed? Well, I think that would be fair, Your Honor. Yes, it does, but I think in this case it does. I mean, I think that there's enough in the complaint to make that allegation. Under main duty to defend laws, it exists. I believe that it is. If you look at the Howe case, and I agree that the Chief Judge's distinction between perhaps CGL policies and other types of policies is a valid one. However, if you look at Howe, Howe involved a case where there was a dog in a condominium association and the court, the main Supreme Judicial Court determined that there was a duty to defend because it's possible, though never alleged in the complaint, that the dog could have done property damage to association property. That was nowhere in the complaint, but the possibility existed. I would suggest that the facts in the Howe case are much more attenuated on the risk or the possibility or potential of property damage than what we have in this case, given the allegations about the system components that Russell Irwin claimed failed. Leakage points, human waste disposal systems. But he would know, at the time he filed the demand, he would have known had any of those risks come to fruition, whereas your dog wandering around the condos, who knows what he did? He may have known, Your Honor, but it certainly was not because it's a notice pleading. He wasn't obligated to put those all in there, as long as he broadly says that the risk of damage to property existed, which I think is what this does. If you will hypothetically assume that the pleadings are simply not sufficient here to invoke the duty to defend on the part of the company, what is the argument as to the president of the company? You're representing both here, aren't you? Yeah, that's correct, Your Honor. The issue with respect to Cabot-Lyman individually is really twofold, and I think Judge Hornby referenced both in his opinion. The first is that the boat was not Cabot-Lyman's product. The product was contracted to be built, manufactured, sold, delivered, or disposed of by Lyman Morse boat building the company. Cabot-Lyman did not contract. But the argument is it doesn't matter who the insured is. The policy excludes coverage as to the product. Well, and I think that if that's the argument being presented, it's an inappropriate reading of the policy. The exclusion needs to be construed strictly against the insurer, and if they intended it to be the product, the exclusion should read that way. It says your product. Don't we look first, as I understand the way you look at insurance policy, you first look at the coverage clauses, the grant coverage. And here it's property damage. So isn't the very first question that you ask is what property? And having answered that question, you determine that it is the product sold by Lyman Morse. And then you go to the exclusions to see if that's excluded or not. And the exclusions, as I understand the insurer's argument, is when you look at the exclusions, you'll see your product, which is what you just defined as the property. How do you respond to that? No, I think the property can be something greater than just the product. I don't think the damage to property... But here the only property... If we assume you lose your cross appeal, then it's undisputed that the only property here is the product sold by Lyman Morse. If you assume... I would agree. If you assume that the only possibility of any damage that could be adjudicated at trial is limited to the product itself, that argument... I don't necessarily disagree with you. I continue to disagree, though, that if they wanted it to be just the product, it's their obligation. They're the ones that have the exclusive purview to word the exclusions the way they want to. They should have simply said the product. By putting the your in, their conscious decision, they've now limited the application to whoever contracts to manufacture, sell, or distribute it, which in this case is clearly Lyman Morse the entity. Can you give me an example of a case where you could buy a product and the product's defective, and under this policy, if you could sue any employee who gave you the product, handed, made a representation about it, and it would not trigger under a CGL policy the duty to defend? Or is it your position that it would always trigger the duty to defend as long as the employee was either a named insured or an insured? I think it would always trigger the duty to defend. And what the carrier certainly can do is can defend under a reservation of rights, and whether there would ever be the indemnity obligation, something down the road. But here, I do think so. If the exclusion worded by them, strictly construed against them, is your product, and this was not Cabot Lyman the individual's product, and then there are record references that show that Cabot Lyman is being sued, at least in part, because of statements that he individually made to Mr. Irwin about Mr. Lyman's. Why aren't those excluded by the exclusion for misrepresentations? You're talking about the UTPA claim? Yeah. I disagree with that position only because whether or not you are the seller of the product might be an affirmative defense to the claim, but main duty to defend law is clear. If the obligation to defend is triggered, even if that claim is subject to dismissal on the merits, you still have to defend. So whether he's the seller might be an argument to be made on the merits of the UTPA claim, but it's not pertinent to whether or not the duty to defend is initially triggered from Mr. Lyman's benefit. Okay. So in every breach of warranty action, there are essentially contract actions, which I always thought CGL policies were basically intended not to cover. They were covering your risk to the outer world, not your commercial transaction, your product's any good or not by itself. But if you're right, if we were to affirm, then in every standard breach of contract action against the merchant, wouldn't plaintiff just sue one of the employees, trigger a duty to defend, which will therefore create a practical incentive for the insurer to kick in some money so they don't have to hire a law firm. I mean, won't that become standard practice in Maine? No, I don't think that it will. Why not? Why wouldn't someone do that? Because I think you still need the very narrow circumstance you have here. If the court were to simply affirm Judge Hornby's decision, in order for this to come up again, you would need a situation where you have the company and the individual sued simultaneously. The individual will have to be sued at least in part because of statements he made individually to a third party. Well, they handed the person the product at the cash register. The company did. How about the cashier who goes back in storage and comes out and says, here, this is product. You're going to like it. But that's not what happened here. Why couldn't you bring your same suit here and that would trigger, under your theory, the duty to defend the cashier? Well, because I think the cashier is clearly involved in the product, so it would become the cashier's product. That's distinguishable than what we have here. This is not Cabot Lyman's product. And the statements he made to Mr. Irwin individually were not related to the product. It was about his personal experiences and the issues that he personally had encountered, not what Lyman Morse had encountered, regarding his experiences around the city. And notably, the issues of refrigeration that Mr. Irwin complains about in his arbitration demand, and I see him all the way throughout his complaint, relate to those issues about humidity and tropical waters. That goes directly back to the point that Mr. Lyman made to Mr. Irwin. So you're saying the representations weren't about the product. They were about something else that the claimant then relied upon? They could have been. I'm not saying, Your Honor, that they didn't relate to the product, but making statements about your personal experiences that may relate to the product does not, as a matter of law, under their exclusion, convert that product into your product, convert it into Cabot Lyman, the individual's product. But he's doing it as the owner of the company that is building the yacht in furtherance of the company's interests in selling the purchaser this handmade yacht, which turns out on his taking control of it not to have satisfied him. I don't think that, excuse me, Your Honor, I don't think that the... Well, in what other context is the owner of the company making these statements but to further the interests of the company? I'm sorry, I didn't catch that. And when does he make the statement? Cabot Lyman is trying to sell the product of his company. He's making those statements as part of the sales pitch, correct? I think that's fair, yeah. Okay. I don't disagree that, and as I think I told Judge Kayada, I don't think it's unrelated to the product, but to suggest that him making these statements of his own personal experiences converts it into your product as defined by their policy is different. We have the argument. Thank you. Thank you, Your Honor. So what about his representation theory? I mean, take the baseball bat. He doesn't say anything about the baseball bat, but he says that league your kid's going to play in, I know they use wiffle balls, and it's false. He buys the bat, and Reliance on that shows up, finds out that bat won't work in the softball league, and they sue him. Why wouldn't there be coverage for that? Well, there wouldn't be, I mean, to me there wouldn't be coverage unless you had, number one, bodily injury or property damage to something that wasn't actual damage to something other than the work or product of the insured. I mean, here there's no, I don't think there's any, well, obviously he's trying to read into the complaint that there's damage to something else. One of the things is, it's not that this complaint's silent. This complaint's very specific to the damages. Sometimes the dilemma you have is a pleading that the circumstances, the factual background is very ambiguous as to whether either someone was hurt or what else was happening, and then you go to the damage, what is the person looking for, and that's ambiguous too. Here you have none of that. You get to the claim for relief, and it's a long, very sparse-out thing, and it's clearly nothing that even remotely alludes to, there's no allusion to personal property being damaged in the complaint, but when you get to the damages, there's nothing that even gets close to it. You know, in Cabot-Lyman's, you can go read paragraph 68, it says what it says, but he wasn't being sued because he lied about his sailing experience. He was being sued because his sailing experience was used as an assurance that he knew what this boat needed to be able to do because he had had that experience. He wasn't being sued because he'd never been on a sailboat, it's strictly in the context too, because it's given as an example. It's as an example to the representations and warranties. Cabot-Lyman said X, and plus it's an account that can't even be brought against anybody unless they're a seller, or the alter ego theory applies, as generally was alleged. The, I just want to say one thing about, because we haven't got into the, the damage thing is a moot issue if there's no duty to defend either, obviously. But fundamentally, to the whole premise of the ruling below in the argument is the collateral source rule, and you can go through all the machinations and all the cases, and there really, to my knowledge, is no case that has ever held that a payment made by a co-obligor on a common obligation is a collateral source. It's true whether you're dealing with joint tort feasors, it's true whether you're talking about two people liable on a note, it's true about any kind of liability. That's not what the collateral source rule is about. This is a, this is a company that was obligated to pay all of its attorney's fees, and it did. The fact that Cabot-Lyman got the benefit of that doesn't mean he's damaged. How are these co-obligors? I mean, it seems to me their obligations arose, the employer had an obligation under employment law to defend. Your client had an obligation under a separate contract. Those are two different sources of two different obligations, which have the same subject at the end. Well, I'm not sure, I don't think- Which you always have in the collateral, it was the collateral source doctrine, absent gratuitous gifts, you always have two people who are obligated towards the same end. They're only a co-obligor when it's, for example, the same note that they signed. Well, if I'm sued by somebody and two of my friends are sued too, and we decide we don't have a conflict of interest, and we decide to have the same attorney, and I'm a minor player, and so even though we're all jointly liable for all the attorney's fees, we agree to divvy it up 40-40-20, and then my insurer who's denying me a defense, I go after him. I can't get paid 100% if I've only paid 20. I mean, that's like, to say that the insurance, the insurers would need to pay three times the total attorney's fees just because one attorney defended three different insurers doesn't make any sense. And it makes no difference here. The analysis is no legally different than if Northern Assurance was a separate entity who had an insurer come in and pay this, and Kevin Lyman became an incidental beneficiary. There's certainly no evidence in the record of some sort of obligate that the company did this because of some particular obligation, particularly given the allegations of fraud and some of what the complaint was about. The real reason for him trying to pierce the veil was because I think this claimant had some suspicion about an ability to collect if he really got a big judgment. But normally, as your honor said, you don't see this scenario too much in a coverage context. That's why there's not a lot of coverage cases out there. Because normally, if you truly have bodily injury or property damage and it's a covered claim, there's no benefit to a claimant adding some officer or principal or something. There's no benefit to it. And there's no benefit to the defendant. If you start to say these exclusions are not even applicable, as long as you sue an owner or an officer or an employee, as you point out, all of a sudden there will be a rational reason to do it that doesn't exist today. Thank you. Please. One question. Your last comment. Are you saying then that if this other defendant was, say, the sales manager, and the sales manager had made all of these expressions of how good the property would be for what they wanted to use it for, he would have no coverage either and there would be no duty to defend? If the only claim was limited to the product that he was talking about. The product would do the same thing and there would be no duty. No duty. I mean, it really doesn't matter then that it's a closely held corporation. Well, Kevin Liman would have been an insurer even if he hadn't been a named insurer. That's the record got sort of roughly developed because this issue really got interjected late in the game to boot. But he and his wife were, in my judgment, named insurers ATIMA only because they own certain, this was a package policy covering property and things of that nature. But he would have been an insurer even without being named because he's an officer acting in the scope as any employee would be. Thank you.